**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| EDGAR ALEXANDER GARCIA SOTO, | Case No. 2:25-cv-02138-RFB-BNW |
| Petitioner, | **ORDER** |
| v. | |
| JASON KNIGHT, *et al.*, | |
| Respondents. | |

## I.   INTRODUCTION

This case is one of a rapidly growing number before this Court challenging the federal government's reading of the Immigration and Nationality Act (INA) to authorize mandatory detention of all noncitizens charged with entering the United States without inspection.[1] The

---

[1] This Court has already granted petitioners relief—both preliminary and on the merits—in thirty-four similar challenges. See Escobar Salgado v. Mattos, No. 2:25-cv-01872-RFB-EJY 2025 WL 3205356 (D. Nev. Nov. 17, 2025); see also Herrera v. Knight, No. 2:25-CV-01366-RFB-DJA, 2025 WL 2581792 (D. Nev. Sept. 5, 2025); Vazquez v. Feeley, No. 2:25-CV-01542-RFB-EJY, 2025 WL 2676082 (D. Nev. Sept. 17, 2025); Roman v. Noem, No. 2:25-CV-01684-RFB-EJY, 2025 WL 2710211 (D. Nev. Sept. 23, 2025); Carlos v. Noem, No. 2:25-CV-01900-RFB-EJY, 2025 WL 2896156 (D. Nev. Oct. 10, 2025); E.C. v. Noem, No. 2:25-CV-01789-RFB-BNW, 2025 WL 2916264 (D. Nev. Oct. 14, 2025); Perez Sanchez v. Bernacke, No. 2:25-CV-01921-RFB-MDC (D. Nev. Oct. 17, 2025); Aparicio v. Noem, No. 2:25-CV-01919-RFB-DJA, 2025 WL 2998098 (D. Nev. Oct. 23, 2025); Dominguez-Lara v. Noem, No. 2:25-CV-01553-RFB-EJY, 2025 WL 2998094 (D. Nev. Oct. 24, 2025); Bautista-Avalos v. Bernacke, 2:25-CV-01987-RFB-BNW (D. Nev. Oct 27, 2025); Arce-Cervera v. Noem, No. 2:25-CV-01895-RFB-NJK, 2025 WL 3017866 (D. Nev. Oct. 28, 2025); Alvarado Gonzalez v. Mattos, No. 2:25-CV-01599-RFB-NJK (D. Nev. Oct. 30, 2025); Rodriguez Cabrera v. Mattos, No. 2:25-cv-01551-RFB-EJY, 2025 WL 3072687 (D. Nev. Nov. 3, 2025); Berto Mendez v. Noem, No. 2:25-cv-02602-RFB-MDC, 2025 WL 3124285 (D. Nev. Nov. 7, 2025); Cornejo-Mejia v. Bernacke, No. 2:25-cv-02139-RFB-

executive branch now takes the position that the INA, specifically 8 U.S.C. § 1225(b)(2)(A), requires the detention of all undocumented individuals during the pendency of their removal proceedings, which can take months or years. According to this interpretation, detention without a hearing is mandatary, no matter how long a noncitizen has resided in the country, and without any due process to ensure the government has a legitimate, individualized interest in detaining them.

According to a leaked internal memo, the Department of Homeland Security (DHS), in conjunction with the Department of Justice (DOJ) adopted this new legal position on a nationwide basis on July 8, 2025.[2] It subjects millions of undocumented U.S. residents to prolonged detention without the opportunity for release on bond, in contravention of decades of agency practice and robust due process protections hitherto afforded to such residents under 8 U.S.C. § 1226(a).[3] On September 5, 2025, the Bureau of Immigration Appeals (BIA) issued a precedential decision

---

BNW, 2025 WL 3222482 (D. Nev. Nov. 18, 2025); Lucero Ortiz v. Bernacke, No. 2:25-cv-01833-RFB-NJK, 2025 WL 3237291 (D. Nev. Nov. 19, 2025); Perez Sales v. Mattos, No. 2:25-cv-01819-RFB-BNW, 2025 WL 3237366 (D. Nev. Nov. 19, 2025); Hernandez Duran v. Bernacke, No. 2:25-cv-02105-RFB-EJY, 2025 WL 3237451 (D. Nev. Nov. 19, 2025); Cabrera-Cortes v. Knight, No. 2:25-cv-01976-RFB-MDC, 2025 WL 3240971 (D. Nev. Nov. 20, 2025); Jacobo Ramirez v. Noem, No. 2:25-cv-02136-RFB-MDC, 2025 WL 3270137 (D. Nev. Nov. 24, 2025); Garcia-Arauz v. Noem, No. 2:25-cv-02117-RFB-EJY, 2025 WL 3470902 (D. Nev. Dec. 3, 2025); Silva Hernandez v. Noem, No. 2:25-cv-02304-RFB-EJY, 2025 WL 3470903 (D. Nev. Dec. 3, 2025); Reyes Cristobal v. Bernacke, No. 2:25-cv-02231-RFB-EJY, 2025 WL 3485770 (D. Nev. Dec. 4, 2025); Carrillo Fernandez v. Knight, No. 2:25-cv-02221-RFB-BNW, 2025 WL 3485800 (D. Nev. Dec. 4, 2025); Pilar Torres v. Bernacke, No. 2:25-cv-02270-RFB-EJY, 2025 WL 3514615 (D. Nev. Dec. 8, 2025); Nolasco-Gomez v. Noem, No. 2:25-cv-02217-RFB-DJA, 2025 WL 3514758 (D. Nev. Dec. 8, 2025); Ramirez-Contreras v. Noem, No. 2:25-cv-02218-RFB-EJY, 2025 WL 3514681 (D. Nev. Dec. 8, 2025); Rodas v. Noem, No. 2:25-cv-02216-RFB-BNW, 2025 WL 3514680 (D. Nev. Dec. 8, 2025); Perdomo-Gonzalez v. Noem, No. 2:25-cv-02121-RFB-EJY, 2025 WL 3514758 (D. Nev. Dec. 8, 2025); Hernandez Isidoro v. Bernacke, No. 2:25-cv-02312-RFB-NJK (D. Nev. Dec. 8, 2025); Serrano Gonzalez v. Knight, No. 2:25-cv-02081-RFB-BNW (D. Nev. Dec. 9, 2025); Morales Rondon v. Bernacke, No. 2:25-cv-01979-RFB-BNW (D. Nev. Dec. 9, 2025); Marquez v. Knight, No. 2:25-cv-02203-RFB-NJK (D. Nev. Dec. 9, 2025); Flores-Garcia v. Bernacke, No. 3:25-cv-00688-RFB-CSD (D. Nev. Dec. 9, 2025).

[2] See ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission, AILA Doc. No. 25071607 (July 8, 2025), https://perma.cc/5GKM-JYGX.

[3] See Kyle Cheney & Myah Ward, Trump's new detention policy targets millions of immigrants. Judges keep saying its illegal., Politico (Sept. 20, 2025 at 4:00 p.m. EDT), https://www.politico.com/news/2025/09/20/ice-detention-immigration-policy-00573850, https://perma.cc/L686-E97L.

1  adopting this new interpretation of the government's detention authority under the INA. See Matter
2  of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025) ("Hurtado"). After Hurtado, immigration judges
3  no longer have authority to hear bond requests or grant bond to noncitizens present in the U.S.
4  who entered without inspection. Id.

5        The overwhelming majority of district courts across the country, including this Court, that
6  have considered the government's new statutory interpretation have found it incorrect and
7  unlawful. See Escobar Salgado v. Mattos, No. 2:25-CV-01872-RFB-EJY, 2025 WL 3205356 (D.
8  Nev. Nov. 17, 2025) (finding "that the plain meaning of the relevant statutory provisions, when
9  interpreted according to fundamental canons of statutory construction," as well as the legislative
10 history and decades of consistent agency practice establish "that the government's new
11 interpretation and policy under [§ 1225(b)(2)(A)] is unlawful."); see also, Patel v. McShane, No.
12 CV 25-5975, 2025 WL 3241212, at *1 (E.D. Pa. Nov. 20, 2025) (collecting at least 282 decisions
13 from district courts finding the application of §1225(b)(2)(A) to noncitizens residing in the United
14 States unlawful). A nationwide class has also been certified, and declaratory relief granted to all
15 class members holding that they are being detained without a bond hearing unlawfully. See
16 Bautista v. Santacruz, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3289861 (C.D. Cal. Nov. 20,
17 2025); Bautista v. Santacruz, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3288403 (C.D. Cal. Nov.
18 25, 2025).

19       Petitioner is currently detained without the opportunity for release on bond in the custody
20 of Federal Respondents at Nevada Southern Detention Center (NSDC), pursuant to this new
21 detention "policy." He asserts the application of § 1225(b)(2) to him is unlawful under the INA,
22 and his continued detention violates the Due Process Clause of the Fifth Amendment. He seeks a
23 writ of habeas corpus requiring that he be released unless Respondents provide him with a bond
24 hearing under § 1226(a) within seven days of the Court's Order. For the reasons set forth below,
25 the Petition is granted and the Court orders Respondents to provide Petitioner a constitutionally
26 adequate bond hearing by **December 16, 2025,** or release him.

## II. PROCEDURAL HISTORY

On October 30, 2025, Petitioner filed his petition for a Writ of Habeas Corpus. ECF No. 1. On November 4, 2025, this case was transferred to the undersigned judge as related to three pending putative class actions pending before the Court. ECF No. 4. On November 5, 2025, the Court ordered Respondents to show cause why the Court should not grant the Petition. ECF No. 5.

On November 10, 2025, Respondents' counsel filed a notice of appearance and motion to extend time to file a response to Order to Show Cause, citing the need for additional time due to the shutdown of the federal government. ECF Nos. 7-8. Petitioner opposed the requested extension, noting that Respondents had failed to meet and confer with Petitioner's counsel regarding the emergency request as required under LR II 7-4(a)(3), and emphasizing the prejudice to the Petitioner that occurs each additional day Respondents' wait to respond. ECF No. 9. Respondents filed their Return to the Petition and Order to Show Cause on November 12, 2025. ECF No. 10.

On November 14, 2025, counsel for Respondent John Mattos appeared and filed a joinder to the Return. ECF Nos. 11-12. The same day, Petitioner filed his Traverse, which asked the Court to strike Respondents' filings for failure to comply with the Local Rules and this Court's scheduling order. ECF No. 13.

The Court's Order follows.

## III. BACKGROUND

### A. Legal Background

The Court fully incorporates by reference the legal background regarding the government's detention authority and removal proceedings under the INA, as well as the government's new statutory reading and mass detention "policy," set forth in its ruling in Escobar Salgado, 2025 WL 3205356, at *2-6 (D. Nev. Nov. 17, 2025).

### B. Petitioner Garcia Soto

The Court finds Petitioner is a citizen of Mexico who has resided in the United States since 2000, when he entered without inspection. He resides in Idaho with his wife and their four children. Three of Petitioner's children are U.S. citizens, and one is a recipient of DACA. One of his children has been diagnosed with severe depression, with symptoms that include suicidal ideation.

Petitioner's criminal history is limited to a single conviction for misdemeanor battery in 2003, and he has no past interactions with immigration. Petitioner asserts that he is eligible for 42-B Cancellation of Removal on account of how long he has resided in the United States, the extreme hardship his qualifying relatives would face is he were deported from the United States, his lack of disqualifying criminal convictions, and because he does not pose as a flight risk or danger to the community.

Mr. Garcia Soto has been detained by DHS for over six weeks. He was arrested on October 19, 2025, as part of a law enforcement raid at a lawful horse race in Wilder, Idaho. DHS commenced removal proceedings against Petitioner by filing a Notice to Appear on October 21, 2025, charging Petitioner as being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) and without valid immigration documents under 8 U.S.C. § 1182(a)(7)(A)(i)(I). ECF No. 10-2. Petitioner is unable to obtain a custody redetermination hearing (bond hearing) due to Hurtado.

### IV.   LEGAL STANDARDS

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "Its province, shaped to guarantee the most fundamental of all rights, is to provide an effective and speedy instrument by which judicial inquiry may be had into the legality of the detention of a person." Carafas v. LaVallee, 391 U.S. 234, 238 (1968). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3).

1  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of
2  Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St.
3  Cyr, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes
4  challenges to immigration-related detention. Zadvydas v. Davis, 533 U.S. 678, 687 (2001); see
5  also Demore v. Kim, 538 U.S. 510, 517 (2003); Trump v. J. G. G., 604 U.S. 670, 672 (2025)
6  (describing immigration detainees' challenge to their confinement and removal as falling "within
7  the 'core' of the writ of habeas corpus.") (*per curiam*) (citations omitted). "The application for the
8  writ usurps the attention and displaces the calendar of the judge or justice who entertains it and
9  receives prompt action from him within the four corners of the application." Yong v. I.N.S., 208
10 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

**V.   DISCUSSION**

As an initial matter, the Court grants Respondents' Motion to Extend Time (ECF No. 5) to file their Return, *nunc pro tunc*. Under Federal Rule of Civil Procedure 6(b), a court may "for good cause," extend a deadline so long as the request is made before the original deadline. Fed. R. Civ. P. 6(b)(1)(A). The Court finds that this request was made prior to the Respondents' original deadline of November 10, 2025, and that there was good cause sufficient to grant Respondents' brief, two-day extension to November 12, 2025, given the federal government shutdown and associated widespread furloughs that were ongoing at the time of the request.

**A. Jurisdiction**

The Court has habeas jurisdiction to review Petitioner's challenge to the lawfulness of his detention, because the relevant jurisdiction stripping provisions of the INA, 8 U.S.C. § 1252 do not apply. See Escobar Salgado, 2025 WL 3205356, at *8-10; Hernandez Duran v. Bernacke, 2:25-cv-2105-RFB-EJY, 2025 WL 3237451, at *4 (Nov. 19, 2025). In evaluating the jurisdiction stripping provisions of the INA, the Court is guided "by the general rule to resolve any ambiguities in a jurisdiction-stripping statue in favor of the narrower interpretation and by the strong presumption in favor of judicial review." Arce v. United States, 899 F. F.3d 796, 801 (9th Cir. 2018) (*per curiam*) (internal quotations and citations omitted). Respondents do not challenge this

1 Court's jurisdiction over the instant case.

### B. Administrative Exhaustion

Respondents argue the Court should dismiss this case because Petitioner has not exhausted his administrative remedies. The Court fully incorporates by reference its prior finding that administrative exhaustion is excused as futile due to the BIA's decision in Hurtado. Jacobo Ramirez v. Noem, No 2:25-cv-02136-RFB-MDC, 2025 WL 3270137, at *5-6 (D. Nev. Nov. 24, 2025).

### C. Statutory Question

Petitioner Garcia Soto challenges the government's new interpretation of the INA, and his detention thereunder, as unlawful. While Respondents assert that § 1225(b)(2) applies to Petitioner and mandates his detention without a bond hearing, Petitioner argues Respondents' interpretation of the statutory scheme of §§ 1225 and 1226 is flawed, contradicting both the statutory framework and the decades of agency practice applying § 1226(a) to people like Petitioner. This Court agrees with Petitioner and fully incorporates by reference its holding and findings in Escobar Salgado v. Mattos. 2025 WL 3205356, at *10-22.

Petitioner is a longtime U.S. resident, who entered the country without inspection decades ago, and who was arrested and detained by ICE in Idaho, far from any port of entry. In addition, Petitioner has no criminal convictions that would subject him to detention under § 1226(c). Accordingly, the Court finds Petitioner is subject to detention under § 1226(a) and its implementing regulations, not § 1225(b)(2)(A), and that the government's new interpretation and policy under that provision is unlawful. Escobar Salgado, 2025 WL 3205356, at *10-22.

### D. Due Process

Petitioner also challenges his ongoing detention without the opportunity for release on bond under § 1225(b)(2) as unconstitutional under the Due Process Clause of the Fifth Amendment. Even if this Court were to accept the government's new reading of § 1225(b)(2), it would still have to contend with Petitioner's due process challenge on this basis. Respondents assert that Petitioner's due process rights are not violated by detention without opportunity for release on bond, citing to the Supreme Court's upholding of detention without bond hearings under

§ 1226(c) in Demore. See ECF No. 21 at 2-3, 19 (citing Demore, 538 U.S. at 522, 531). However, Demore's holding was based on the government establishing a particular interest in detaining a limited class of noncitizens who had been convicted of certain crimes and were therefore statistically more likely to abscond from removal proceedings. Demore, 538 U.S. at 526-27. In addition, the Court noted that detention without bond of noncitizens in that narrow class satisfied due process because the convictions had been obtained with the "full procedural protections our criminal justice system offer." Id. at 513-14. That interest is plainly not implicated in this case, where Petitioner has no qualifying criminal convictions. Furthermore, the government has not shown it has an individualized purpose in detaining Petitioner.

This Court further incorporates by reference the legal authorities and standards set forth in Escobar Salgado v. Mattos regarding the due process rights of noncitizens. 2025 WL 3205356, at *22-24. For the following reasons, the Court finds that Petitioner is currently being detained without the opportunity for release on bond in violation of his procedural and substantive due process rights.

### 1. Procedural Due Process

To determine whether detention violates procedural due process, courts apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1203-07 (9th Cir. 2022) (collecting cases and applying the Mathews test in a similar immigration detention context and holding "[u]ltimately, Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context").

Under Mathews, the courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335.

The first Mathews factor considers the private interest affected by the government's ongoing detention of Petitioner without the opportunity for release on bond. See Mathews, 424

1  U.S. at 335. Here, that is Petitioner's interest in being free from imprisonment, "the most elemental
2  of liberty interests." Hamdi, 542 U.S. at 529. In this country, liberty is the norm and detention "is
3  the carefully limited exception." United States v. Salerno, 481 U.S. 739, 755 (1987); see also
4  Rodriguez Diaz, 53 F.4th At 1207 ("An individual's private interest in freedom from prolonged
5  detention is unquestionably substantial.") (citations omitted).

6        Additionally, Petitioner's liberty interest is not diminished by any final order of removal,
7  or the availability of any existing process to challenge Respondents' decision to detain him without
8  bond. Cf. id. at 1208 (holding the habeas petitioner's liberty interest was diminished by the fact
9  that he was subject to a final order of removal, had already been afforded an individualized bond
10 hearing, and had additional process available to him through a further bonding hearing before an
11 IJ upon a showing of materially changed circumstances).

12       Second, the Court considers "the risk of an erroneous deprivation of [Petitioner's] interest
13 through the procedures used, and the probable value, if any, of additional procedures." Mathews,
14 424 U.S. at 335. There are no existing procedures whatsoever for Petitioner to challenge his
15 detention pending the conclusion of his removal proceedings without the opportunity for release
16 on bond. The risk of erroneous deprivation is extraordinarily high where ICE and DHS agency
17 officials have sole, unguided, and unreviewable discretion to detain Petitioner without any
18 individualized showing of why his detention is warranted, nor any process for Petitioner to
19 challenge the exercise of that discretion. The likelihood of erroneous deprivation caused by this
20 lack of process is demonstrated by numerous prior cases before this Court where an IJ held a bond
21 hearing for a petitioner prior to Hurtado and found that the government had not established a
22 justification for detention. See, e.g., Escobar Salgado, 2025 WL 3205356; Aparicio v. Noem, No.
23 2:25-CV-01919-RFB-DJA, 2025 WL 2998098 (D. Nev. Oct. 23, 2025); Berto Mendez v. Noem,
24 No. 2:25-cv-02602-RFB-MDC, 2025 WL 3124285 (D. Nev. Nov. 7, 2025). Likewise, given that
25 Petitioner Garcia Soto has significant familial and financial ties in the country, and Respondents
26 have not asserted he is dangerous or a flight risk, the Court finds that he is being arbitrarily and
27 unjustifiably deprived of his liberty.

28       The additional procedures afforded under § 1226(a), including an individualized custody

1  redetermination by an immigration judge, *i.e.*, a bond hearing, substantially mitigate the risk of
2  erroneous deprivation of Petitioner's liberty, because those procedures require the government to
3  establish that Petitioner presents a flight risk or danger to the community. This would account for
4  the constitutional requirement that "once the flight risk justification evaporates, the only special
5  circumstance [ ] present is the alien's removable status itself, which bears no relation to a detainee's
6  dangerousness." Zadvydas, 553 U.S. at 691-92. An adverse decision by an immigration judge in a
7  bond hearing can further be appealed, and Petitioner could seek additional custody
8  redeterminations based on changed circumstances, such that the outcome of a bond hearing would
9  be subject to "numerous levels of review, each offering [Petitioner] the opportunity to be heard by
10 a neutral decisionmaker." Rodriguez Diaz, 53 F.4th at 1210 (finding the bond hearing procedures
11 available through the implementing regulations of § 1226(a) would render "the risk of erroneous
12 deprivation . . . relatively small.") (citation omitted). As such, the second Mathews factor also
13 weighs heavily in favor of granting Petitioner the procedural protections under § 1226(a).

14      The third and final Mathews factor considers the "Government's interest, including the
15 function involved and the fiscal and administrative burdens that the additional or substitute
16 procedural requirement would entail." 424 U.S. at 335. The Court acknowledges that the
17 government's interests in enforcing immigration laws, including "protecting the public from
18 dangerous criminal aliens" and "securing an alien's ultimate removal," are "interests of the highest
19 order." Rodriguez Diaz, 53 F.4th at 1188-89. These interests are in fact served by the
20 individualized determination by an immigration judge, based on a review of evidence presented
21 by the government and the noncitizen, as to whether an individual is dangerous or at risk of fleeing
22 removal proceedings, under existing, well-established procedures. In failing to articulate any
23 individualized reason why detaining Petitioner is necessary to enforce immigration law, the
24 question arises "whether the detention is not to facilitate deportation, or to protect against risk of
25 flight or dangerousness, but to incarcerate for other reasons." Demore, 538 U.S. at 532-33
26 (Kennedy, J. concurring). And the government has no interest in the unjustified deprivation of a
27 person's liberty.

28      Further, the Court finds that limiting the use of detention to only those noncitizens who are

dangerous or a flight risk through existing bond procedures serves the government and public's interest by *reducin*g the fiscal and administrative burdens attendant to immigration detention. Hernandez v. Sessions, 872 F.3d 976, 996 (9th Cir. 2017) (Noting in 2017 that "the costs to the public of immigration detention are staggering: $158 each day per detainee, amounting to a total daily cost of $6.5 million. Supervised release programs cost much less by comparison: between 17 cents and 17 dollars each day per person.").

In sum, the Court finds the Mathews factors weigh heavily in factor of Petitioner, and therefore, his detention without the opportunity for release on bond violates his procedural due process rights.

### 2.  Substantive Due Process

Immigration detention violates the Due Process Clause unless it is ordered in a criminal proceeding with adequate procedural protections, or in non-punitive circumstances "where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." Zadvydas, 533 U.S. at 690.

Respondents have asserted no individualized justification—let alone a special or compelling justification—to continue to deprive Petitioner of his physical liberty.  Accordingly, in addition to finding that the challenged regulation violates procedural due process, this Court further finds that Petitioner is currently detained in violation of his substantive due process rights. See Escobar Salgado, 2025 WL 3205356, at *25.

**E.  Scope of Relief**

The federal habeas corpus statute "does not limit the relief that may be granted to discharge of the applicant from physical custody." Carafas v. LaVallee, 391 U.S. 234, 238 (1968). "Its mandate is broad with respect to the relief that may be granted." Id. "It provides that '[t]he court shall . . . dispose of the matter as law and justice require.'" Id. (quoting 28 U.S.C. § 2243).

Here, Petitioner faces the specific harm of being detained for months without a bond hearing pursuant to § 1226(a). The Court finds that harm is remedied by ordering a bond hearing by **December 16, 2025**. Given the due process rights at stake, if a bond hearing is not provided promptly within that time frame, Petitioner shall be immediately released until it is determined

that his detention is warranted under 8 U.S.C. § 1226(a).

### F. Attorneys' Fees

The Court defers on ruling on the matter of attorneys' fees and costs. Should Petitioner's counsel wish to pursue a claim for attorneys' fees and costs under the Equal Access to Justice Act (EAJA), they are instructed to file a separate motion on the issue in accordance with LR 54-14.

## VI. CONCLUSION

Based on the foregoing **IT IS HEREBY ORDERED** that the Petition (ECF No. 1) is **GRANTED**.

**IT IS FURTHER ORDERED** that Respondents must provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) no later than **December 16, 2025**.

**IT IS FURTHER ORDERED** that Respondents are enjoined from denying Petitioner release on bond on the basis that he is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2). Thus, in the event that bond is granted, the Court **ORDERS** that Respondents are enjoined from invoking the automatic stay to continue Petitioners' detention, as the Court has already found the automatic stay unconstitutional and adopts that finding here. Herrera v. Knight, No. 2:25-CV-01366-RFB-DJA, 2025 WL 2581792, at *13 (D. Nev. Sept. 5, 2025).

In the event that bond is granted, Respondents are **ORDERED** to immediately release Petitioner. The Court has received notice of the hardship other petitioners have incurred in their efforts to satisfy bond, and therefore, the Court **FURTHER ORDERS** that Petitioner be afforded 45 days from the date of release to satisfy any monetary bond conditions.

**IT IS FURTHER ORDERED** that if the individualized bond hearing is not conducted by **December 16, 2025**, Petitioner shall be immediately released until it is determined that his detention is warranted under 8 U.S.C. § 1226(a).

**IT IS FURTHER ORDERED** that the parties shall file a status report on the status of Petitioner's bond hearing by **December 17, 2025**. The status report shall detail if and when the bond hearing occurred, if bond was granted or denied, and if denied, the reasons for that denial.

///

1  **IT IS FURTHER ORDERED** that Respondents' Motion to Extend Time (ECF No. 5) is
2  **GRANTED**, *nunc pro tunc.*
3      **DATED:** December 10, 2025.

                                                   **RICHARD F. BOULWARE, II**
                                                   **UNITED STATES DISTRICT JUDGE**